## Potts's Appeal.

1. The Act of 16th July, 1842 concerning executions, providing for a stay in certain cases, was not designed to affect levies previously made on executions.

2. Where the sheriff, having made levies on personal property previous to the passage of such Act, took the bond of the defendant with surety conditioned for the redelivery of the property levied on, &c., according to the terms of the said Act, which proceeding was not objected to by the execution creditors, it was *held* that the suspension of the proceedings not being required by law, the delay of the execution creditors was to be regarded as merely voluntary; that the lien of the executions on the property was not preserved, and that the execution afterwards issued first in order of time was entitled to the proceeds.

3. The issuing of an *alias fi. fa.* without a previous *fi. fa.* and levy returned being disposed of was an irregularity; but the defendant alone could take advantage of it.

APPEAL of George H. Potts, one of the assignees of a judgment in the name of Stokes, Ferguson & Williams *v.* Charles Lawton, to January Term, 1851, from the decree of the Court of Common Pleas of *Schuylkill county*, distributing the proceeds of the personal property of the said defendant, sold under a writ of *alias fi. fa.* issued against said defendant at the suit of the Miners' Bank of Pottsville.

On the 23d of February, 1842, a *fi. fa.* was issued, on a judgment of the Miners' Bank of Pottsville *v.* Charles Lawton (No. 72, March Term, 1842), for $10,000, with interest from 30th November, 1841. This writ came into the hands of the sheriff of Schuylkill county on the 24th of February, 1842, and on March 19, 1842, was levied upon personal property of the defendant. The execution was returnable to March Term, 1842, the return day being the 21st day of March, 1842.

On the 16th of June, 1842, a writ of *fi. fa.* was issued on a judgment of Williams & Ferguson *v.* Charles Lawton (No. 57, July Term, 1842), for $15,000, with directions to the "sheriff to stay the writ on the payment of $10,175, with interest on $10,000 from June 16, 1842." This writ came into the hands of the sheriff on the 16th of June, 1842, and on the next day was levied upon the personal property of Charles Lawton, partly subject to prior lien of *fi. fa.*, March, 1842, No. 72, June 17, 1842. The return day of this execution was 18th July, 1842.

It was the proceeds of the property which was levied on under these executions which was to be distributed.

On the 24th of November, 1842, Lawton, the defendant, gave notice to the sheriff to have the property upon which the sheriff had levied by virtue of the writs of *fi. fa.* in his hands, valued and appraised, according to the provisions of the Act of Assembly of July 16, 1842.

On the 30th of November, 1842, Charles Lawton, with two sure-

ties, executed a bond to the sheriff in the penal sum of $25,325, reciting the *fi. fas.* of the Miners' Bank and that of Williams & Ferguson, and conditioned for the forthcoming of the property, &c., according to the terms of the 4th section of the Act of 1842, concerning executions.

The property was appraised at above $12,000.

Afterwards, viz., on May 25, 1843, an *alias fi. fa.* (83 July Term, 1843), was issued on the judgment of *the Miners' Bank v.* Lawton, which came to the hands of the sheriff May 26, 1843, and was levied on the property of Charles Lawton, subject to all prior claims and levies made on the same, the same having been levied upon on a *fi. fa.* to March Term, 1842, No. 72; (an inventory of the articles followed). The *fi. fa.* referred to was the *fi. fa.* of the Miners' Bank.

The amount directed to be levied was $8069.12, interest from December 9, 1842.

The sheriff made return to this writ, "personal property sold for $2671.15."

The net proceeds of the sale under the *alias fi. fa.* of the Miners' Bank were paid into Court in pursuance of a rule for that purpose. The Miners' Bank claimed the proceeds under their executions. This claim was resisted by Williams & Ferguson, who claimed the proceeds under their *fi. fa.* of July Term, 1842, No. 57.

It was admitted by the contending parties that neither of them gave any directions to the sheriff as to the manner in which the writs were to be executed, nor did they interfere in any way with his action upon them, further than to urge him to collect the money.

The first writ of *fi. fa.* of the Miners' Bank, and the *fi. fa.* of Williams & Ferguson, were both returned levied upon the same property (the writ of the Miners' Bank having priority of lien), with an appraisement and bond, according to the directions of the Act concerning executions, *passed 16th of July,* 1842.

The question depended on the construction of the said Act of 16th July, 1842.

The first section of that Act provides, " That in all cases where lands, tenements, or hereditaments *have been, or shall be hereafter levied* on by virtue of any writ of *fi. fa. or other writs of execution,* certain proceedings may be had to obtain a stay of execution."

The second section provides for certain proceedings, "in all cases where lands, tenements, or hereditaments *have been heretofore levied on,* and condemned or extended, *or that hereafter may be extended* in virtue of any writ of *fieri facias,* and in all cases where any lands, tenements, or hereditaments *have been* or *hereafter* shall *be* seized or levied on by virtue of *levari facias.*"

The third section provides for proceedings " in all cases where estates for life, or for a term of years, in any lands, tenements, or

hereditaments *have been or shall be* seized by *anj writ or execution.*"

The fourth section, being the one that relates to levies *on personal property*, provides, "That in all cases where personal property *shall be* taken in execution by virtue of any writ of *fieri facias* issued out of any Court of Common Pleas, or by virtue of any execution issued by a justice of the peace, the officer to whom the writ shall be directed shall, if requested by the debtor, have the property levied upon, appraised, and if the property cannot be sold for two-thirds of the appraised value, notice shall be given to the plaintiff, and the sale of the property shall be stayed for the term of twelve months from that date, if the defendant shall execute a bond, with sureties, to secure the forthcoming of the property, according to the conditions prescribed in this section. The appraisement and bond to be returned with the writ.

An auditor was appointed, who, on 1st June, 1850, made report, in which it was argued that it was irregular for an *alias* writ of *fi. fa.* to be issued on the judgment of the Miners' Bank before the levy on the first one was disposed of: (2 *Tidd's Prac.* 934), *Bacon's Ab. Exn. D.* 397, 5 *Adol. & Ellis* 365; 1 *Dallas* 312; 11 *Ser. & R.* 304; 5 *Barr* 319; 1 *Trou. & Haly* 495. It was also argued, that if such irregularity were committed, the *alias fi. fa.* was an abandonment of the lien acquired by the original writ: 2 *Murphy* 63; *Id.* 143; 2 *Devereaux* 23. He was of opinion that the lien of the *fi. fa.* of the Miners' Bank ought to be postponed to the lien of the *fi. fa.* on the judgment of Williams & Ferguson, and he reported in favor of the net proceeds of the sale of the personal property being applied *to the fi. fa. under the latter judgment.*

On the part of The Miners' Bank, exception was taken to such report, and, on 9th September, 1850, the Court decreed the money to The Miners' Bank.

From such decree this appeal was entered, and the exception taken was to the decree referred to.

*Hughes* and *Parry*, for appellant.

*Loeser*, for The Miners' Bank.

The opinion of the Court was delivered, January 20, 1853, by

LEWIS, J.—In Sedgwick's Appeal, 7 *W. & Ser.* 260, it was held that the delivery of goods on a forthcoming bond, under the appraisement law of 16th July, 1842, did not discharge the lien of the execution. This was because the suspension of proceedings was required by law, and, as the law never works injury to those who comply with its requirements, the preservation of the lien

[Potts's Appeal.]

was a necessary consequence. But, as the Act of 1842 was not designed to affect levies previously made, the delay of proceedings under the first levies, by the two execution-creditors claiming the money, must be regarded as merely voluntary. The delay was not required by law, and the law will not preserve the liens of the executions during its continuance. The liens of the first levies being thus discharged, the goods were open to seizure again. The superior vigilance of The Miners' Bank, by its execution and levy of the 26th May, 1843, secured a preference, and it became entitled to the money. It is true, that, issuing a new execution without disposing of the levy returned upon the old one, was an irregularity. But as the defendant made no complaint on this ground, and no one else could, the bank's title to the money remains unimpeached. The decree of the Court below is therefore affirmed.

Decree affirmed.